Bradley C. Smith - Case No. 21-90242
341 (a) Meeting
2/2/2022

*********************************************************************************

List of parties in attendance:

Sylvia Facklam for Trustee
David Stephens for Bradley Smith, Debtor
Bradley Smith, Debtor
Bill Pedersen for Lloyd Gillespie
Lloyd Gillespie, Creditor
Robyn Gillespie, Creditor
Seth Elmore of John Price's Office for Clint Ramsey and CJR Management, Creditors
Don Duran for Angelina Savings Bank
Marc Henry for Commercial Bank of Texas

*********************************************************************************

Facklam - Okay. Good afternoon. We are on the record with Case No. 21-90242, Bradley Smith. I am going to, um, get everybody to let me know who is here and who you represent. Uh, let's start with Bill Pedersen. Sir, if you would state your name and who you represent.

Pedersen - Bill Pedersen. I represent Lloyd Gillespie.

Facklam - Okay. John Price? If you would please state your name and who you represent.

Price (Elmore) - Yes, this is Seth Elmore stepping in for John Price who, um, whose wife had medical surgery. Uh, we represent Clint Ramsey and CJR Management.

Facklam - Okay. Mr. Duran?

Duran - My name is Don Duran and I represent Angelina Savings Bank.

Facklam - And Marc Henry?

Henry - Marc Henry. I represent Commercial Bank of Texas.

Facklam - Okay. I am going to start by swearing in the Debtor and asking him some questions. I'll ask my questions first, and then if we can just go down the line. We'll start with Mr. Pedersen, then John Price, Mr. Duran, and then Mr. Henry. Okay?

Facklam - Mr. Smith, will you please raise your right hand? Do you solemnly swear or affirm the testimony you're about to give is the truth, the whole truth, and nothing but the truth?


EXHIBIT F

Smith - Yes.

Facklam - Okay, thank you. Let the record reflect that I did see copies of Debtor's driver's license and social security card, and I did verify his social security number and it does match the BNC notice. Mr. Stephens, will you please verify for the record that the copies of the ID and social security cards that we have in our possession were made from the originals in your office and sent to us?

Stephens - I verify that.

Facklam - Okay, thank you. Mr. Smith, will you please state your full name and address for the record?

Smith - Bradley Coy Smith. 12526 North FM 95, Nacogdoches, Texas 75961.

Facklam - Did you sign the petition, schedules, statements, and all of the documents that were filed in this case?

Smith - Yes.

Facklam - Did you read them before you signed them?

Smith - Yes.

Facklam - Are you personally familiar with all of the information contained in these documents?

Smith - Yes.

Facklam - To the best of your knowledge, is all of that information true, correct, and complete?

Smith - Yes.

Facklam - Did you list everything that you own in your paperwork?

Smith - Yes.

Facklam - Did you list every creditor that you owe money to?

Smith - Yes.

Facklam - Have you lived in the state of Texas for the last 4 years?

Smith - Yes.

2

Facklam - Have you ever filed a bankruptcy before?

Smith - No.

Facklam - Do you owe any child support or alimony that you haven't disclosed?

Smith - No.

Facklam - Have you filed all of your required tax returns for the past 4 years?

Smith - Yes.

Facklam - Is the copy of the tax return that you provided to your attorney the most recently filed tax return?

Smith - Yes.

Facklam - Looks like that was the 2020 and you owed for that year, correct?

Smith - Yes.

Facklam - Okay, while you're in the bankruptcy, you are to provide a copy of your tax return to the trustee every year. If you're due a refund, you do get to keep the first $2000 of that refund. And anything over $2000, you are to mail to the trustee's office. Okay?

Smith - Okay.

Facklam - I'm going to go over your plan with you.

Smith - Okay.

Facklam - You have proposed a 60 month plan. Your payments are $6,500 per month beginning January 29th. They will be due on the 29th of every month. Out of those funds, the trustee will pay the remainder of your attorney fees, a claim to Lloyd Gillespie for some arrears on your home, Robyn Gillespie for the '18 travel trailer, Commercial Bank of Texas for 4 truck tractors, 1 trailer, Ford Motor Credit on the '18 F-350 pickup, Southside Bank for the '18 Viking trailer, and Gabe Gibbel (sp?) will be making direct payments to American Credit Financial on the '18 Nissan Titan, CJR Company, uh...well, CJR are the co-debtors and they will be making the payment to BancorpSouth on 4 log trailers. And Gabe Gibbel will be making the payment to John Deere on 2 haycutters, a sprayer, a fluffer, and a wraper.

Smith - Yes.

Facklam - You are surrendering your interest to Angelina Savings Bank for the boat, 3 trailers, 2 light plants, golf cart. And to Lloyd Gillespie, you're going to be surrendering your Peterbilt truck tractor. The trustee will also make payments to the IRS for some back taxes in Nacogdoches County for some back property taxes. You are assuming lease payments to CJR Management, Wood County Leasing, and uh...2 different leases with Wood County. Or Woodco. I'm sorry. And then anything that is left over is going to go to your unsecured creditors on a pro rata basis. You are responsible to keep your mortgage payments current to Lloyd Gillespie. And that payment is $1,750 a month. Is that correct?

Smith - Yes, ma'am.

Facklam - And what day of the month is that payment due?

Smith - Around the 15th.

Facklam - As of the filing of the bankruptcy, have you kept current with that mortgage payment?

Smith - Yes.

Facklam - Your case is coming up for confirmation on March 31st. If your case gets approved at that time, our office is going to mail you some postcards. We will also provide you with an email address. Beginning with the April mortgage payment, if your case does get confirmed, you need to notify our office that you are current with your mortgage payments. Whether it's through the postcards, or through the email. Whatever works best for you. But if we don't hear from you, we are going to assume that you're not making mortgage payments, we will notify the court, and they will set your case for hearing. So, it's very important that you communicate with us, okay?

Smith - Okay.

Facklam - Uh, when in 2021 did you purchase the '18 travel trailer?

Smith - Uh, about 6 months ago, I believe.

Facklam - And why was it necessary to make that purchase?

Smith - I use it for work when I work out of town.

Facklam - You have claimed the '14 Polaris as tools of the trade. How in your business do you use that?

Smith - I check the woods and stuff with it.

4

Facklam - On your schedules, on schedule B, you have listed an income check for $23,500. Have you deposited that yet?

Smith - Yes.

Facklam - Is that money still in your bank account?

Smith - No.

Facklam - Does Smith Litter Services have any assets?

Smith - No.

Facklam - And what type of business do you have? Can you describe?

Smith - Uh, trucks and logging.

Facklam - Do you file separate tax returns?

Smith - No.

Facklam - You just do a schedule C with your personal?

Smith - Yes, ma'am.

Facklam - Do you have any employees other than contract labor?

Smith - No.

Facklam - Can you explain, the um...there's a direct payment that's being made to BancorpSouth that is strictly being paid by CJR. Can you explain that transaction, please?

Smith - Yes. That's trailers that's, um, financed under my name and his that's used to haul all his wood when I have trucks that's actually running.

Facklam - And you made $699,000 in 2021. Is that correct?

Smith - Yes.

Facklam - Looks like you netted about $10,180 from the sale of two trailers back. Do you know what you did with that money? How you spent that?

Smith - Yes. What, what trailers was that? I paid Commercial Bank.

Facklam - Commercial Bank?

5

Smith - Yes.

Facklam - Um, with what you netted? After the lienholders were paid, you netted $10,180, you used that to pay Commercial? Is that correct?

Smith - Yes. I used that to pay Commercial Bank.

Facklam - Okay. I don't have any further questions. I'm going to allow the creditors to ask any questions that they may have. Uh, but please make sure that you keep it short since we do have a lot of creditors present today. Okay, Mr. Pedersen, you may begin with any questions that you have.

Pedersen - Bradley, I'm talking about the 58.90 acres. You refer to that sometimes as Grandma's house?

Smith - Yes, sir.

Pedersen - Okay. Where do you physically reside? Where do you and Kristi live and spend the night?

Smith - Well, right now we're living in our [garbled] place over there and trying to move back to 12526 in the next week or so. We've actually been packing and getting ready to move back over there. The place I actually don't own is where we live.

Pedersen - Okay. And, is that a rental agreement at that house, or...

Smith - Well, it was never filed at the courthouse, Mr. Pedersen, as far as I don't own it.

Pedersen - Okay. Do you own that house, or are you...

Smith - No, I do not. No, I do not own that house.

Pedersen - Okay. Okay. But you're gonna move next week?

Smith - Yes, sir. That's our...That's what we're shooting for.

Pedersen - Okay. Let me ask you a few questions about the condition of the house on the 58.90 acres. Grandma's property.

Smith - Yes, sir.

Pedersen - Okay. When is the last time you spent the night there?

Smith - Uh, about a year ago.

Pedersen - Okay. And does the roof leak?

Smith - No, sir. Not that I'm aware of.

Pedersen - And does it have electricity?

Smith - No, it does not.

Pedersen - Okay. And when was the last time the electricity was on?

Smith - About 3 months ago.

Pedersen - Okay. Does it get water there?

Smith - Yes, sir.

Pedersen - Is it turned on, or...is it...

Smith - No, sir. It is not currently turned on.

Pedersen - Okay. When was the last time water served that property?

Smith - Um, 2 months ago.

Pedersen - Okay. How about sewer? Does the sewer, septic system work?

Smith - Yes, sir.

Pedersen - Okay. Okay. Do you have...what furniture do you have in that house?

Smith - Well, I don't have any. I'm moving my furniture in.

Pedersen - Okay. Do you have insurance on the house at Grandma's property?

Smith - Yes, I do.

Pedersen - Okay. Who is that with?

Smith - That's through Germania Insurance.

Pedersen - Okay. Okay. Yeah. Now, how long has it been since you paid taxes on the 58.90 acres?

Smith - Probably 3 years.

Pedersen - Okay. And do you owe Lloyd Gillespie on that 58.90 acres...do you owe him approximately $303,000?

Smith - I wasn't aware it was that high.

Pedersen - Oh, okay. But it's secured by a deed of trust, is it not?

Smith - Yes, to Lloyd Gillespie...or Gillespie Partners.

Pedersen - Okay. You list the value of Grandma's property, the 58.90 acres, as $451,120. How did you determine that value?

Smith - Uh...off the um, Texas tax deal. Off the internet.

Pedersen - Off the Central Appraisal District?

Smith - Yes, sir. That's it. Yes, sir.

Pedersen - Okay. So, you would say that the Central Appraisal District Value is a valid, good value?

Smith - I would think, maybe.

Pedersen - Yes, sir. Okay, is there a mobile home located on that?

Smith - Yes.

Pedersen - On the 58.90 acres?

Smith - Yes.

Pedersen - Okay. Now whose mobile home is that?

Smith - That's mine.

Pedersen - Okay. Who lives in that mobile home?

Smith - Uh, an older lady lives in it and I have used it for storage.

Pedersen - Okay. Now, does she pay rent, the lady that lives in it?

Smith - No, she does not.

Pedersen - Okay. Does she pay utilities or anything like that?

8

Smith - Yes, sir. She pays utilities.

Pedersen - Okay. And those are in her name?

Smith - Yes.

Pedersen - What is her name?

Smith - Susan Jetter (sp?).

Pedersen - Okay. Susan Jetter. Does she live there by herself?

Smith - Yes, she does.

Pedersen - Okay. And how long has she been there?

Smith - Uh...maybe a little over a year? Or two?

Pedersen - Okay.

Smith - Something like that.

Pedersen - Now, again, your testimony is that you're gonna move into the 58.90 acres in the house next week. Is that right?

Smith - That's what we're shooting for, Mr. Bill.

Pedersen - Okay. Alright. Thank you, sir.

Smith - Thank you, Mr. Bill.

Facklam - Okay, Mr. Price?

Price (Elmore) - Uh, again, this is Seth Elmore. Um, Mr. Smith, I represent Clint Ramsey. Uh, as you know, he's the owner of a business, CJR Management. Is that correct?

Smith - Yes, sir.

Elmore - And you've listed him as one of your creditors here in the Certificate of Notice. Is that correct?

Smith - Yes, sir.

Elmore - Okay. Have you ever had any other type of agreement with Mr. Ramsey on any type of contract with him?

Smith - Yes, sir. We, um, I hauled some wood for him. Then again, when my trucks was working and running. And, well, he just, I guess he like holds it out based on what we do.

Elmore - Okay. Um, did you ever sign any agreement with Mr. Ramsey?

Smith - Yes, sir.

Elmore - That's not listed within your Certificate of Notice?

Smith - Yes, sir.

Elmore - Okay. Can you tell us about that?

Smith - I don't...I don't remember what it was. It was a long time ago.

Elmore - Okay

Smith - To be honest...

Elmore - Okay, um, so it would appear that you and Mr. Ramsey signed an agreement here that he was gonna loan you $60,000 for a certain amount of time beginning with payments back to Mr. Ramsey back starting in about December of 2019. Does that sound familiar?

Smith - Yes, sir.

Elmore - Okay. Um, how many of those payments did you make?

Smith - Sir?

Elmore - How many of those payments...do you remember what the balance might be on that note?

Smith - I...I'm only...if I was to guess, it would be around $32 to $35...

Elmore - Okay. So...

Smith - Somewhere around there.

Elmore - Alright. Um, did you basically put up any type of your own equipment basically, you know, as collateral or guarantee against that um...

Stephens - I'd like to interject. If that's on the note and if it says there's collateral, you need to show him a copy of the note that you're asking questions about. Some legal document. Is that what you're asking?

Elmore - That is what we're asking, sir. I'm just trying...I'm just trying to identify...

Stephens - Yeah, but you're catching him cold. If you're talking about a document, you need to show him the document.

Elmore - Okay. Alright. [holds up document] Yeah, can you see that?

Stephens - Go ahead and load it up on Zoom.

Elmore - How, how, how, how, how close do you need? How close...

Stephens - You need to go ahead and load it like a Zoom person, like people that use Zoom would normally load things...

Elmore - We'll do that. So, do you want us to just revisit this after we load it up, or... I'm just trying to identify that he owes liability, sir.

Stephens - Well, okay.

Elmore - You want us to load it up?

Stephens - Yes.

Elmore - Okay, so...we'll uh...

Facklam - Okay. So, Mr. Price, go ahead and load that up and we can go on to Mr. Duran while you do that.

Elmore - Thank you.

Facklam - Okay. Mr. Duran?

Duran - Thank you. Um, Mr. Smith, you've indicated in your schedules and in your plan that you want to surrender a boat, 3 trailers, 2 light plants, and a golf cart to Angelina Savings. Is that correct?

Smith - Yes, sir.

Duran - Do you have in front of you that list that I sent to your lawyer?

Stephens - Yeah, and Don on the way the schedules run, there's actually more than that, but it cuts it off when you print schedule D, but if you'll look at page 10 on schedule B, it shows everything that Angelina has. Um, it's actually listed fully on schedule B.

Duran - Well, David, does that include all these items on this list?

11

Stephens - Yeah, just about. He's ready talk to you about some of them. I think some of them have been sold for bank notes and that kind of thing, but if you want to ask him, he's prepared to talk about every one of them. Okay?

Duran - Okay. Thank you. When you say boat, are you talking about no. 5 on the list?

Smith - Yes, sir.

Duran - Do you still have the Mercury outboard motor and the trolling motor?

Smith - Yes. It's all together.

Duran - Okay. You have 3 trailers. Can you tell me which of those trailers are on the list?

Smith - A 2005 Holden oilfield trailer. A 2008 Cayman...

Duran - Okay. That's no. 1?

Smith - Yes, sir. No. 1.

Duran - Okay. No. 2?

Smith - No. 2 is a 2008 Cayman oilfield trailer.

Duran - Okay.

Smith - Okay. And, um, no. 8, 4, 5, 6 tandem dump trailer.

Duran - Okay.

Smith - Uh...and then you have a 2013 utility trailer. That's actually a 2014...or 2013. I'm sorry. Cattle trailer.

Duran - Is that No. 9?

Smith - That's No. 9. Yes, sir.

Duran - And you still have that?

Smith - Yes, sir.

Duran - Okay. And then you say 2 light plants. Would you tell me what numbers those are?

Smith - Uh...3 and 4.

Duran - Okay. Now, that leaves 6, 7, 10, 11, and 12. Do you have still have those items?

Smith - Okay. No. 3 and 4, I noticed last week, that they are missing from my property at Martinsville and I'm going to make a police report on them for you on them light plants. That's only on 3 and 4.

Duran - Okay.

Smith - Okay. And, what other numbers did you say?

Duran - 6, 7, 10, 11, and 12. Do you still have those?

Smith - No. 6 is the Ranger trailer. That's with the boat. That's the boat trailer.

Duran - Okay.

Smith - Okay. No. 7 I sold 3 years ago and paid Angelina Savings. The John Deere?

Duran - Okay.

Smith - And then no. 11 was a trailer that I had in the shop in Nacogdoches and they had a break in and it got stolen. Long story short, it was filed reported stolen with Nacogdoches City, and that was probably a year ago.

Duran - And whose business had that trailer?

Smith - Rockin C Trailers.

Duran - Okay. What about no. 10?

Smith - Yes, I still have it.

Duran - And no. 12?

Smith - No. 12 is at a shop down near Beaumont. Payar's (sp) Truck and Trailer Repair. They still have it.

Duran - Is it being repaired now?

Smith - Yes, it's down there. It was. Yes, sir.

Duran - Okay. What kind of arrangements can you make for Angelina Savings to pick up all of this equipment?

Smith - I can get addresses where the stuff is at and then what stuff I have there at the house, I'll gather it all up and put it in one spot. Or I don't mind bringing it there to you in Lufkin or somewhere if that helps you.

Duran - Okay. Do you have insurance on any of this stuff?

Smith - No, sir.

Stephens - You might mention to him that one's not...that one's...

Smith - Yeah, I have a 2008...

Stephens - That's no. 2.

Smith - Yeah, no. 2 that Angelina Tank Company used, but that trailer is sitting at the sawmill in Lufkin...at Gillespie Lumber now.

Duran - Okay, great. Thank you very much. Pass the witness.

Facklam - Mr. Henry? You're muted.

Henry - Hey. Yes, Mr. Smith, the loan documents from Commercial Bank indicated that you had pledged 100 head of Brahma cattle to the bank to secure the loans with Commercial Bank and it appears that back in October 28, 2020, there was a head count, but I don't see where there's any cattle listed in your schedules. Can you tell us what happened to the cattle?

Smith - Yes, sir. We sold the cattle and paid Commercial Bank of Texas with the money.

Henry - And when was that done?

Smith - About, um...6 months ago? 8 months ago?

Henry - At the time that you sold the cattle, do you recall how many head you had?

Smith - No, sir. I probably sold about 45-50.

Henry - And that was, that was cows? Were there any calves?

Smith - Yes, sir. That was mostly cows.

Henry - I'm sorry. So, how many cows...approximately, how many cows and how many calves did you have to sell?

Smith - I wanna say 70 total. 75ish.

Henry - You have any bulls at the time?

Smith - Yeah, that was counting the bulls. It just went off...or he did.

Stephens - Okay. Don't say anything unless they ask a question. Okay?

Smith - Okay.

Henry - And, where did you sell those, uh...

Smith - Nacogdoches Livestock

Henry - Since October of 2020, have you sold any cattle anywhere other than through Nacogdoches Livestock?

Smith - No.

Henry - Did you ever list any cattle for sale on a website called "The Range.com"?

Smith - No.

Henry - At this point in time, you don't have anymore cattle. Is that correct?

Smith - No, sir.

Henry - Alright. You remember how much you paid to Commercial Bank? At least an estimate?

Smith - No, sir. I don't. I paid them quite a few lump sums the last 14 to 18 months. But I don't remember...recall each one.

Henry - Alright. That's all the questions I have.

Facklam - Okay, thank you. Seth?

[Elmore puts document on screen via screen share feature]

Stephens - Okay, let's see here.

Elmore - A while back, we attempted to share our document. Mr. Stephens, can you and your client see the document?

Stephens - Yeah, I think we can see it. Yeah, I see part of it. Let me see what's going on here. Welcome... yeah, yeah, it's coming up. Yeah, you're rolling with it, I guess. Yeah, I can see it now. I can see the 1st three paragraphs. Are you rolling it up, or is that just my computer? Okay, I see it. The whole thing.

Elmore - Okay. Alright. Mr. Smith, can you see that document?

Smith - Yes, sir. I can see it. Alright, Mr. Smith. We were talking about this document or we were talking about an agreement. Uh, do you recognize this document? Yes, sir.

Elmore - Okay. We appreciate what you've told us so far. Does this document appear to reflect the questions and answers that we had earlier?

Smith - Yes, sir.

Elmore - Okay. Can you tell us...you stated you thought maybe that somewhere between $32,000 and $35,000 may be still possibly outstanding. Is that correct?

Smith - Yes, sir.

Elmore - Okay. Can you just...can you tell us what um...the 4 freightliners listed here securing this agreement...what's the status of those, of those rigs now?

Smith - Okay...

Stephens - Well, first off, I'm going to object to the words "securing". I don't see a security agreement, but you can ask him the status of the vehicles.

Elmore - I understand. I understand, sir.

Stephens - Okay

Elmore - Okay, so, what's the status of those 4 freightliners?

Smith - Okay, um...the 2000 freightliner, the motor's out. The '98 freightliner has got all kind of issues to it. It needs to be fixed. And the '96 freightliner's currently in the shop getting some work done to it. And the 2001 freightliner is the one that actually runs.

Elmore - Okay. Alright. Mr. Smith, is that your signature there at the bottom of that page?

Smith - Yes

Elmore - Okay. Um, who did you sign that in front of that day?

Smith - Uh, me and Clint Ramsey.

Elmore - Okay. Who else? Is there another signature on that page?

Smith - Yeah, but...

Stephens - It's unreadable.

Smith - Yeah, I don't know who that it.

Stephens - [unintelligible]

Elmore - Is there anybody else present that day that you remember?

Smith - Man, not that I can remember. I mean, that's been 3 years ago.

Elmore - Okay. Um, alright. That will be all the questions. I'll pass the witness.

Smith - Thanks.

Facklam - Okay. I think everybody has had an opportunity to question the Debtor and I have no further questions.

Pedersen - Could I ask one question of the Debtor?

Facklam - Okay. Yes, just make it brief, please.

Pedersen - Okay. Bradley, do you have any hay? Uh, across the road from your Grandma's property?

Stephens - Any what? I didn't hear you.

Smith - Any hay.

Stephens - Hay?

Pedersen - Hay.

Stephens - Hay.

Smith - Yes.

Pedersen - Okay. And whose hay is that?

Smith - Uh, it's my hay. I mean, it's mine. It's been there for 2 years. But yeah, there's some up there.

Pedersen - Okay. So it belongs to you and it's been there 2 years. What's your intention to do with that hay?

Smith - Uh, they don't even own that property...

Stephens - You need to quit talking and answer questions.

Smith - What am I gonna do with that hay?

Pedersen - Yes, sir.

Smith - I hope that somebody needs some that I can sell it to.

Pedersen - Okay, thank you so much.

Facklam - Okay. Alright. I don't have anything further, and I'm going to leave this meeting open, Mr. Stephens. It looks like we still need some supporting documents to go along with the P&L's, but I will review it more thoroughly and then if you have that, if you'll just send it to me, I think that...

Stephens - Okay

Facklam - Alright. Thank you, guys. Have a good one. Bye bye.

Stephens - I think that's my last hearing and I'm gone for the day. Okay?

Facklam - Yes, it is.

Stephens - Okay, thank you.